IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:19-cr-00078

BRANDON CARTER

MEMORANDUM OPINION AND ORDER

Pending before the court is a pro se Motion for Compassionate Release, [ECF No. 49], filed by Defendant Brandon Carter. The Government has responded to the Motion. [ECF No. 52]. The Motion is **DENIED** for the reasons that follow.

I.  Background

On August 8, 2019, Mr. Carter pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [ECF No. 35]. On February 20, 2020, I sentenced Mr. Carter to a term of 30 months imprisonment, followed by three years of supervised release. [ECF No. 40]. Mr. Carter is expected to be released on July 19, 2021. He is currently serving his sentence at the Federal Correctional Institution Gilmer ("FCI Gilmer") in Glenville, West Virginia.

Mr. Carter previously filed two pro se letter-form motions on April 30, 2020 and May 6, 2020, respectively, seeking compassionate release because of his various purported medical diagnoses and the current public health crisis caused by COVID-19. [ECF Nos. 45, 46]. On May 19, 2020, I denied those motions without prejudice for

failure to exhaust administrative remedies. [ECF No. 48]. On May 27, 2020, Mr. Carter filed the instant Motion, [ECF No. 49], which incorporates the reasons provided in his previous Motion as well as addresses the exhaustion issue. To his Motion, Mr. Carter attaches a copy of the request for compassionate release he made to the Warden and the Warden's response, denying that request. [ECF No. 49]. The Government in this case argues that Mr. Carter's Motion should be denied because (1) he has not exhausted his administrative remedies and (2) he has failed to present any "extraordinary and compelling reasons" that warrant a sentence reduction.

## II. Discussion

For me to reduce Mr. Carter's sentence under compassionate release, I must find that Mr. Carter has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). He has not satisfied all of those requirements, and I cannot reduce his sentence.

### (a) Exhaustion

Section 3582(c)(1)(A) provides that:

> … the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*, may reduce the term of imprisonment…

18 U.S.C. 3582(c)(1)(A) (emphasis added). Prior to the enactment of the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. The First Step Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, provided certain circumstances were satisfied. In the wake of the COVID-19 pandemic, there has been significant litigation regarding compassionate release and the proper interpretation of the triggering events that § 3582(c)(1)(A) requires in order for a prisoner to access the courts. *See e.g.*, *United States v. Thompson*, ---F.Supp.3d ---, No. 2:18-CR-00105, 2020 WL 2121371, at *4 (S.D.W. Va. May 5, 2020) (collecting cases). Put plainly, the court may modify a term of imprisonment upon the earliest of one of three events:

1. When the Director of the BOP has made a motion;
2. When the defendant has exhausted his or her administrative remedies with the BOP and petitioned the court;
3. When 30 days have lapsed from the date of the request to the BOP and defendant has petitioned the court.

*Id.*

The language of the statute is clear. There are two ways for a defendant to petition the court for compassionate release. And those two options are alternatives, as evidenced by the statute's decree that a court may reduce a term of imprisonment upon the occurrence of option one "or" option two "whichever is earlier." 18 U.S.C. § 5382(c)(1)(A). With the first option, the defendant must fully complete the BOP's

administrative appeals process. *See id.* With the second option, "the statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No more, no less." *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *3 (S.D. Iowa Apr. 29, 2020).

The inclusion of alternative avenues to petition the court makes § 3582's exhaustion requirement different from that of other statutes. *See e.g.*, *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) ("Importantly, § 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense."); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020) ("while § 3582(c)(1)(a)'s gate-keeping provision often is described as an 'exhaustion' requirement, it is not 'an exhaustion requirement in the traditional sense…'"); *United States v. Underwood*, No. CR TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) ("Unlike the PLRA, the compassionate release exhaustion requirement does not even limit its reach to exhaustion of 'available' administrative remedies…").

Though the language of the statute is clear that upon the expiration of 30 days after the warden has received the compassionate release request, an inmate may petition the court, the "lapse of 30 days" provision has been interpreted differently by some courts. As I read the language, the "lapse of 30 days" provision has nothing to do with whether the warden grants or denies the inmate's request for compassionate release, but simply sets the amount of days an inmate has to wait before petitioning the court. That is, "a 'lapse of 30 days' refers simply to the passage of 30 days,

regardless of what happens in the interim." *United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *2 (D. Ariz. Nov. 8, 2019). An alternative interpretation is that a "lapse of 30 days" "applies only if the warden does not grant or deny the request during those 30 days," and is not simply a time measure for when the inmate may petition the court. *Id.* District courts are split between these two possible interpretations.[1]

The split in interpretation largely boils down to the meaning of the word "lapse." Generally, the term "lapse" is defined as "the passage of time" when it is used to modify a period of time, such as a number of days or years. *See lapse*, Merriam-Webster; *lapse*, Cambridge Dictionary ("a period of time passing between two things happening"). Another possible definition of "lapse" is "the termination of a right or

---

[1] *See e.g.*, *Stephenson*, 2020 WL 2566760, at *2 ("[T]he statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No more."); *Brown*, 2020 WL 2091802, at *3 (holding same); *Haney*, 2020 WL 1821988, at *3 ("Importantly, § 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense… it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court."); *United States v. Woodson*, No. 18-CR-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020) ("If the BOP does not act favorably on the defendant's request after 30 days, the exhaustion requirement is dispensed with and the defendant may bring his application to the Court."). *But see United States v. Peuser*, No. 8:17CR60, 2020 WL 2732088, at *1 (D. Neb. May 26, 2020) (finding that § 3582(c)(A)(1) requires administrative exhaustion if a warden acts on a request within 30 days); *United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277, at *9 (E.D. Ark. May 14, 2020) (holding same); *United States v. Rushton*, No. 4:18-CR-329, 2020 WL 2104554, at *1 (N.D. Ohio May 1, 2020) (holding same); *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020), reconsideration denied, No. 2:16-CR-00269-BLW, 2020 WL 2202437 (D. Idaho May 6, 2020) (holding same); *United States v. Bolino*, No. 06-CR-0806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (holding same);*United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *3 (D. Ariz. Nov. 8, 2019) (holding same).

privilege through neglect to exercise it within some limit of time." *Lapse*, Merriam-Webster. Courts point to this second definition of "lapse" when interpreting the statute to mean that a defendant may motion the court after 30 days only if the warden fails to act on the defendant's request for a period of 30 days. *See Smith*, 2020 WL 2487277, at *9. Understood this way, the BOP has a right to respond to the defendant's request. That right to respond is terminated only when the BOP neglects to exercise it within 30 days. While this is a tempting interpretation, it does not square with the fact that the term "lapse," as used in the § 3582, modifies number of days or time period. Therefore, the plain meaning of the text is that the "lapse of 30 days" refers to the *passage* of 30 days. *See United States v. Woodson*, No. 18-CR-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020) ("The plain language of the statute is free from ambiguity.").

Moreover, the statutory requirements a defendant must meet before petitioning the courts cannot be divorced from the purpose of compassionate release. The statute vests courts with the authority to modify a prisoner's sentence if it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[2] The context of the statute therefore is to address exigent and urgent situations. An unlimited timeframe for the administrative exhaustion process

---

[2] Section 3582(c)(1)(A)(ii) also allows for the court to modify a prisoner's sentence if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

frustrates the purpose of the statute. Why include the 30 day wait period if its only function is to prompt the warden to respond faster but does not restrict the overall timeframe of an appeal to the BOP? "Indeed, anyone familiar with the multiple demands that the BOP has faced for many years in this era of mass incarceration can reasonably infer that Congress recognized that there would be many cases where the BOP either could not act within 30 days on such a request or, even if it did act, its review would be superficial." *Haney*, 2020 WL 1821988, at *3. "Congress was determined not to let such exigencies interfere with the right of a defendant to be heard in court on his motion for compassionate release, and hence only limited him to 30 days before he could come to court in the ordinary course." *Id.* The "hybrid requirement in this statute—either exhaust or wait 30 days—"thus reflects the purpose of the changes the First Step Act made to compassionate release, i.e. "congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released." *Id.* (citing *United States v. Russo*, No. 16-cr-441 (LJL), ECF No. 54, at 4, 2020 WL 1862294 (S.D.N.Y. Apr. 3, 2020)). Prompt judicial determination may be critical in the age of the COVID-19 pandemic.

Most courts that are persuaded by the opposite interpretation of § 3582(c)(A)(1), that the 30 days refers only to the time by which the warden must respond, rely on the assertion that interpreting "lapse of 30 days" to mean the passage of 30 days renders the statutory avenue of fully exhausting administrative remedies meaningless. *See e.g., United States v. Allen*, No. 1:15CR36-HSO-RHW-1, 2020 WL

3159180, at *2 (S.D. Miss. June 12, 2020) ("There is also a risk that the former interpretation would 'render the statute's provision regarding full exhaustion of administrative remedies meaningless...'"). I disagree. It is true that the 30 day backstop that Congress explicitly included in § 3582 significantly limits the timeframe in which exhaustion of administrative remedies must occur. *See Stephenson*, 2020 WL 2566760, at *5 ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role."). That limitation does not render exhaustion meaningless. If a warden denies a defendant's request within a matter of days, then a defendant can seek relief through the administrative appeals process even though petitioning the court is not yet available. The inclusion of exhausting all administrative rights to appeal is therefore not superfluous; it provides a process for a defendant to seek relief *before* 30 days, encouraging the BOP to act as quickly as practicable.

The unique requirements in § 3582 of either exhaust or wait 30 days, affords the BOP an opportunity to weigh in on a defendant's request while also ensuring timely review. *See id.* ("§ 3582(c)(1)(A)'s gate-keeping provision... allows a defendant to come to court before the agency has rendered a final decision."). The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed). The statute's

30 day backstop does indeed place limits on the BOP's process for dealing with compassionate release decisions. But those limits are a policy choice, with which courts may not interfere.

I therefore FIND that Mr. Carter has met the necessary criteria outlined in §3582(c)(1)(A) to petition this court for compassionate release. On April 28, 2020, Mr. Carter filed a request for compassionate relief with the Warden at FCI Gilmer. [ECF No. 49]. Mr. Carter appears to have received a response from the Warden denying his request. *See id.* That response is not dated. *Id.* In its filing, the Government points out that the date on which the Warden actually received the request is unclear. I find it difficult to evaluate the asserted difference between when a request is sent to a warden and when he or she receives it. Neither pro se Defendant nor the Government, that would presumably have better access to necessary materials from the BOP than a prisoner, provided any records showing a date of receipt by the Warden. Neither party has offered anything beyond mere assertion that the date of receipt is different than the date of request. I find it appropriate to assume in this case that the date the request was sent, April 28, 2020, is the date received.

Mr. Carter filed his Motion for Compassionate Release on May 27, 2020. [ECF No. 49]. I recognize that May 27 is only 29 days after April 28, which is one day sooner than the required 30 day wait period. At the time of this court's review of the motion, however, 30 days have unquestionably passed since the Warden's receipt of Mr. Carter's request. Like other courts addressing pro se prisoners' motions for compassionate release, rather than requiring Defendant to refile his motion in order

9

to comply with the 30 day requirement, I will proceed to address the merits of his request. *See United States v. Grady*, No. 1:18-CR-00113-MR-WCM, 2020 WL 2569994, at *2 (W.D.N.C. May 21, 2020). Finding otherwise would be an unnecessary waste of judicial resources and would have no effect on the ultimate outcome.

### (b) Merits

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[3] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts, including this court, have found "'extraordinary and compelling' reasons 'supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19.'"[4] *United States v. White*, No. 2:17-CR-00198-4, 2020 WL

---

[3] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for the BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

[4] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.[4] Thus, courts have taken this to

10

3244122, at *3 (S.D.W. Va. June 12, 2020) (citing *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *7 (N.D.N.Y. May 27, 2020)); *see also United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); *see also Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html).

---

mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

As previously mentioned, Defendant in this case is currently imprisoned at FCI Gilmer. According to the BOP, FCI Gilmer has 5 inmates who have tested positive for the COVID-19 virus. COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited June 23, 2020). This Court recognizes "the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks that it presents for *all* of us, including, and perhaps especially, those individuals" who are "presently detained in federal custody." *United States v. Wiggins*, No. 19-CR-258 (KBJ), --- F.Supp.3d----, 2020 WL 1868891, at *8 (D.D.C. Apr. 10, 2020) (internal citations omitted). While any number of COVID-19 cases within the prison context is great cause for concern, simply a generalized assertion of the existence of the pandemic alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Mr. Carter states that he suffers from various medical conditions including "posttraumatic stress disorder, borderline personality disorder major depressive disorder [sic] attention deficit/hyperactivity disorder [sic] among other things." [ECF No. 46]. In essence, he argues that the combination of the COVID-19 pandemic, prison conditions, and his specific mental illnesses have created an unbearable situation for him, which constitute "extraordinary and compelling reasons" for a reduction in his sentence. *See* [ECF Nos. 45, 46]. Importantly, Mr. Carter is 35 years old—he is neither elderly nor terminally ill—and does not fall into the high-risk category of individuals most susceptible to the COVID-19 virus. *See* Groups at Higher Risk for

Severe Illness, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html). I have no doubt that the general anxiety and legitimate fear caused by this public health crisis along with Mr. Carter's mental conditions have presented a difficult situation for him. But without any evidence upon which to evaluate the interplay between Mr. Carter's mental conditions, the prison conditions at FCI Gilmer, and the virus, I cannot find "extraordinary and compelling reasons" to reduce Mr. Carter's sentence. *See United States v. Anderson*, No. 17-CR-00595-YGR-1, 2020 WL 2838797, at *2 (N.D. Cal. June 1, 2020) (denying a defendant's motion for compassionate release based on his diagnosis of depressive disorder because defendant did not provide sufficient evidence that his condition constituted an "extraordinary and compelling reason" to reduce his sentence). For these reasons, his Motion for Compassionate Release [ECF Nos. 45, 46, 49] is **DENIED**.

### III. Conclusion

The court **DENIES** Defendant's pro se Motion for Compassionate Release, [ECF No. 49]. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: June 25, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE